In the Matter of Revocation of Restaurant Liquor License No. R14575, Amusement Permit No. AP16646 and Sunday Sales Permit No. SS-4610, Issued to 66-Liberty Belle Tavern Corporation, 6600 Limekiln Pike, Philadelphia, Pa. 66-Liberty Belle Tavern Corporation, Appellant.

Submitted on briefs, April 8, 1976, to Judges KRAMER, WILKINSON, JR., and BLATT, sitting as a panel of three.

*Abraham J. Levinson,* for appellant.

*J. Leonard Langan,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Robert A. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, July 30, 1976:

This is an appeal by 66-Liberty Belle Tavern Corporation from an order of the Court of Common Pleas of Philadelphia County, dated September 10, 1975, which affirmed an order of the Pennsylvania Liquor Control Board. The Board had assessed a fine of $100 against Liberty Belle and had revoked its Sunday Sales Permit. The trial court conducted a hearing *de novo* on the Board's allegation that Liberty Belle had furnished false information regarding sales in order to obtain the permit. The court found as a fact that a fraud had been perpetrated, and Liberty Belle now argues that this finding is not supported by substantial, relevant evidence. We disagree and affirm the trial court.

The only real dispute concerns the methods used by the Board's auditor, as reflected in the documents entered into evidence through the auditor's testimony. In order to obtain the Sunday Sales Permit, Liberty Belle's application had to show that its sales of food and nonalcoholic beverages equaled at least forty per-

cent of its total sales of food and alcoholic beverages. 40 Pa. Code §11.172. This percentage must prevail during a period of ninety consecutive days during the twelve months immediately preceding the date of the application. In the instant case the relevant period was April 1, 1974-June 30, 1974, for which Liberty Belle reported a figure of 40.47 percent, barely enough to qualify.

The Board's auditor determined that the gross sales were actually $56,551.29 (Liberty Belle reported $40,392.00) and that food sales were $16,325.00 (this was the amount Liberty Belle reported), resulting in a figure of only 28.87 percent of total sales.

There is no question that the Board introduced sufficient evidence to support the court's finding of fraud if the auditor's testimony and documentary submissions were admissible. Liberty Belle maintains that it was error to admit the auditor's computations because he took into account Liberty Belle's inventory as it existed at a point in time subsequent to the 90-day application period (September, 1974). Liberty Belle suggests that any data that is not directly related to the period at issue is irrelevant.

Two factors prompt us to disagree with this contention. First, the auditor testified, without objection, that Liberty Belle's manager told him that the inventory remained more or less constant. This tends to make the inventory as it stood in September 1974 a reliable, probative indicator of the status of inventory during the 90-day period. Second, as the Board pointed out at the hearing, there is no way for an auditor to determine precisely what the inventory was during a period prior to the audit.

A large portion of Liberty Belle's brief is devoted to a vigorous attack on what is described as the "conjectural" computations of the auditor. We have examined each instance of disagreement and are not

pursuaded that the computations are so lacking in probative value as to be irrelevant. We must acknowledge that in cases of this kind the Board, in the pursuit of its police function, must of necessity attempt to reconstruct the probable sales experience of the licensee. A certain amount of statistical imprecision is inevitable, and certain hypotheses must at times be utilized. *Bennett's Dew Drop Inn, Inc. v. Pennsylvania Liquor Control Board,* 18 Pa. Commonwealth Ct. 586, 337 A.2d 295 (1975). If the disparity between the two percentages was not so great, we might be more receptive to Liberty Belle's argument, but we see nothing in this record which indicates that the auditor's computations were likely to be error to the extent of 12 percent of sales.

Order affirmed.